UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CAROLINE M. C.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:19-CV-00045-MGG |
| | ) |
| ANDREW SAUL, | ) |
| Acting Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Caroline M. C. ("Ms. C.") seeks judicial review of the Social Security Commissioner's decision denying her application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI, as allowed under 42 U.S.C. § 405(g). The undersigned may enter a ruling on this matter based upon the parties' consent. 28 U.S.C. § 636(c); 42 U.S.C. § 405(g). [DE 14]. Ms. C.'s complaint became ripe, following the filing of Ms. C.'s reply brief on September 23, 2019. [DE 23]. For the reasons discussed below, the Court reverses the decision of the Commissioner and remands for further proceedings.

**I.     OVERVIEW OF THE CASE**

Ms. C. was born on April 20, 1964, and she was 50 years of age at the time of the alleged onset of disability, June 20, 2014. [DE 11 at 239]. At the time of application, she

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the Plaintiff by first name and last initial only.

was 5 foot, 4 inches tall, and weighed 254 pounds. [*Id*. at 275]. She alleged that she had pervasive arthritis, high blood pressure, morbid obesity, osteoporosis of the right knee, depression, anxiety, panic attacks, mental illness, post-traumatic stress disorder (PTSD), and problems with anger management. [*Id*.].

During the past nineteen years, Ms. C. has worked on and off in a variety of positions: correctional officer, bank teller, loan officer, store manager, leasing director, and property manager. [*Id*. at 58-62]. For part of that time, Ms. C. was also a stay-at-home mother for her two children (2000 – 2003). [*Id*. at 59]. She last worked in June of 2014, which was same time as her alleged onset of disability. [*Id*. at 62].

Ms. C.'s submitted an application for DIB on April 30, 2015, and for SSI on June 3, 2015, both of which alleged an onset of disability beginning June 20, 2014. [DE 11 at 239, 241]. The application was denied initially on September 14, 2015, and upon reconsideration on April 4, 2016. Following a hearing on February 23, 2018, the Administrative Law Judge ("ALJ") issued a decision on March 29, 2018, which affirmed the Social Security Administration's ("SSA") denial of benefits. [DE 11 at 20 *et seq.*, and 47 *et seq.*]. The ALJ found that Ms. C. has severe, "medically determinable impairments" that significantly limit her ability to perform basic work activities. [*Id.* at 23 (citing SSR 85-28)]. However, the ALJ determined that none of Ms. C.'s impairments (alone or in combination) met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1. [*Id.* at 23-25]. Moreover, the ALJ found that Ms. C. has the residual functional capacity ("RFC") to perform light work as defined by the regulations with some limitations. [*Id.* at 25]. While the ALJ found that Ms. C. was unable to perform any

past relevant work [*Id.* at 31], he determined that there are jobs that exist in significant numbers in the national economy that Ms. C. can perform. [*Id.* at 32] Based on the testimony of the vocational expert ("VE"), the ALJ concluded that Ms. C. would have the ability to meet the requirements for employment as a routing clerk, retail marker, and ticket taker. [*Id.* at 32–33]. Based upon these findings, the ALJ denied Ms. C.'s claims for benefits.

## II.    DISABILITY STANDARD

In order to qualify for DIB and SSI, a claimant must be "disabled" under the Social Security Act ("Act"). A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims for disability benefits under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity ("SGA"); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her RFC; and (5) whether the claimant is capable of making an adjustment to other work. 20 C.F.R. §§ 404.1520; 416.920[2]; *see also Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of

---

[2] DIB regulations are found at 20 C.F.R. § 404, while SSI regulations are found at 20 C.F.R. § 416. They are essentially identical. For efficiency's sake, the court will only reference the DIB regulations in this Opinions and Order.

proof at every step except Step Five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000).

**III.    STANDARD OF REVIEW**

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). The Court must give deference to the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The deference for the ALJ's decision is lessened when the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot be affirmed if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297

F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must, at least, provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question under judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007). Substantial evidence is "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th. Cir. 2001).

## IV. ANALYSIS

### A. Issues for Review

In challenging the ALJ's decision, Ms. C. alleges the ALJ committed at least three separate errors in his decision. Ms. C. alleges that: (1) the ALJ's RFC is not supported by substantial evidence and failed to fully account for functional limitations arising from all of Ms. C.'s medically determinable impairments (severe and non-severe), especially her limitations in concentration, persistence, and pace ("CPP"); (2) the ALJ improperly weighed the opinion of the Ms. C.'s examining physician and improperly discounted this medical evidence; and (3) the ALJ's analysis of Ms. C.'s subjective symptoms was

5

legally insufficient because the ALJ used an incorrect legal standard for his review. Each argument is addressed in turn.

### B. Accounting for CPP Limitations in the RFC

Before crafting a claimant's RFC, an ALJ is required to determine whether the claimant's medical impairments are "severe" at Step Two of the disability analysis. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). An impairment is not severe if "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work". SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985). Here, the ALJ determined that Ms. C. had the following severe impairments: (1) osteoarthritis of the knees, (2) degenerative disc disease of the lumbar spine, (3) obesity, (4) anxiety disorder, (5) depressive disorder, (6) post-traumatic stress disorder ("PTSD"), and (7) panic disorder. [DE 11 at 22]. Additionally, the ALJ found that Ms. C. had the following non-severe impairments: (1) hypertension, (2) coronary artery disease, (3) obstructive sleep apnea, (4) anemia, (5) carpal tunnel syndrome, and (6) cannabis abuse. [*Id.* at 23].

If an ALJ determines that any of a claimant's alleged impairments are severe, the ALJ proceeds to the Step Three Listing analysis to determine if the claimant is presumptively disabled based on the severity of her impairments. 20 C.F.R. § 404.1520(a)(4)(iii). Here, as part of his Step Three listing analysis, the ALJ concluded that Ms. C. has moderate limitations in concentration, persistence, and pace. [*Id.* at 24].

The ALJ also concluded that Ms. C. has experienced moderate limitations in adapting or managing herself. [*Id*.]. While acknowledging Ms. C.'s statement that "she does not handle stress well at all, and [] it takes time for her to adjust to changes in her routine," the ALJ found her judgment "largely intact" and that she was able to perform tasks related to personal hygiene and grooming. [*Id.* at 25]. Subsequently, the ALJ defined Ms. C.'s RFC as being able to perform light work with the following limitations:

> [T]he claimant has the residual functional capacity to perform light work as defined in [citations omitted] except that the claimant can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl, but can never climb ladders, ropes or scaffolds. The claimant is limited to performing simple, routine tasks, and is limited to making judgments on simple work-related decisions. . . . . The claimant can frequently respond appropriately to supervisors, but can occasionally respond appropriately to co-workers and to the public.

[*Id.* at 25]. The ALJ restated, verbatim, the limitations from the RFC in his hypothetical to the VE at the hearing. [*Id.* at 70-71].

A claimant's RFC is the most activity in which she can engage in a work setting despite the physical and mental limitations that arise from her impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p; *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). Ms. C. argues that the ALJ's mental RFC determination is not supported by substantial evidence. Specifically, Ms. C. contends that the RFC, and identical hypothetical to the VE, do not include any CPP limitations and therefore contradict the ALJ's finding of "moderate" CPP limitations at Step Three.

An ALJ must evaluate all relevant evidence when determining a claimant's RFC, including evidence of non-severe impairments. 20 C.F.R. § 404.1545(a). This evidence

7

includes a claimant's deficiencies in concentration, persistence, or pace. *O'Connor–Spinner*, 627 F.3d at 619. A claimant's mental ability is relevant to the RFC analysis, because "[a] limited ability to carry out certain mental activities . . . may reduce your ability to do past work and other work." 20 C.F.R. § 404.1545(c).

The Seventh Circuit has provided that, "[a]s a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). While there is no "per se requirement" for an ALJ to use the specific terminology of "concentration, persistence, and pace" in a hypothetical, a court "will not assume that the VE is apprised of such limitations . . . ." *Id.* When the hypothetical question "does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand." *Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004). In most cases, an ALJ "should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner*, 627 F.3d at 620–21.

As shown above, the ALJ crafted an RFC—and an identical hypothetical to the VE—that did not incorporate the words "concentration, persistence, and pace." The Seventh Circuit permitted "an ALJ's hypothetical omitting the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be

8

unable to perform." *O'Connor-Spinner*, 627 F.3d at 619. However, in order to determine whether an RFC excludes the tasks that someone with the claimant's limitations would be unable to perform, one must first know the claimant's limitations.

The ALJ neither explicitly defined Ms. C.'s specific CPP limitations, outlined the evidence such that any inference he may have made was clear, nor articulated a rationale connecting the evidence to his RFC determination. Instead, the ALJ relied on his recitation of incomplete evidence regarding Ms. C's CPP limitations. Without any further explanation, this Court cannot trace the ALJ's logic from the conflicting evidence cited to the physical limitations included in the RFC. For instance, the VE did not indicate that Ms. C. had any skills that were transferable from her prior employment. [*Id.* at 67-75]. The VE did opine that Ms. C. could not perform any of her past jobs [*Id.* at 71]. The VE acknowledged that someone who would need to lie down at unscheduled (random) times for up to one hour during an eight-hour workday would not be eligible for employment as a routing clerk, cafeteria attendant, or cleaner. [*Id.* at 75]. Further, the VE noted that someone who off-task more than ten percent of the time would make it difficult to maintain employment. [*Id.*].

Yet, the ALJ did not analyze how Ms. C.'s medical conditions and history of absences would impact his RFC analysis. The ALJ's lack of analysis of Ms. C.'s transferable skills as well as her likelihood of medical absences undermine the ALJ's RFC analysis by leaving a fissure in the logical bridge. While this lack of analysis does not, by itself, produce a conclusion that the ALJ's RFC determination is incorrect, it does prevent this Court from adequately reviewing the ALJ's RFC analysis.

Furthermore, the Seventh Circuit has rejected generic limitations, such as those requiring "routine work," finding that they do not on their own account for moderate CPP limitations. *See Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018). Here, the ALJ used similar boilerplate language to limit Ms. C. to "simple, routine, and repetitive tasks." [DE 11 at 25]. While such generic language may be permissible in some situations, the ALJ has not created the necessary logical bridge to allow this Court to track the cited evidence to the RFC limitations and, therefore, ensure that these largely generic limitations fully account for Ms. C.'s CPP limitations in the mental RFC. *Yurt*, 758 F.3d at 858–59.

### C. Weight Given to Opinion Evidence

In crafting an RFC, the ALJ must consider "all of the relevant medical and other evidence" in the record. 20 C.F.R. § 404.1545(a)(3); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). Here, the ALJ supported his RFC analysis by presenting a summary of Ms. C.'s medical records in chronological order, including a medical source statement dated February 12, 2018, from Ms. C.'s treating physician, Dr. Carolina V. Ocampo. The ALJ summarized Dr. Ocampo's medical source statement as follows:

> [Dr. Ocampo[3]] opined that the claimant had less than sedentary exertional limitations, and could sit for less than two hours during an eight-hour workday and could stand or walk for less than half an hour during an eight-hour workday. [Dr. Ocampo] observed that the claimant needed to get up [from a seated position]. [Dr. Ocampo] also opined that the claimant could lift and carry up to 10 lbs. occasionally. [Dr. Ocampo] observed that the claimant could not grasp or grip bilaterally, push or pull arm controls but could engage in fine manipulations over an eight-hour day due to bilateral carpal tunnel syndrome. [Dr. Ocampo] opined that

---

[3] The ALJ incorrectly refers to "Dr. OCampo" throughout his decision. [*Accord* DE 11 at 971].

10

the claimant could not use either feet [sic] for repetitive action during an
eight-hour day due to bilaterally [sic] knee osteoarthritis that caused
significant pain and swelling. Finally, [Dr. Ocampo] opined that the
claimant should avoid bending and squatting during an eight-hour day,
but could occasionally reach during an eight-hour day.

[DE 11 at 28].

The ALJ then afforded little weight Dr. Ocampo's "opinions" noting several reasons. The ALJ explained that he had discounted Dr. Ocampo's opinions because she was a treating source that had examined the claimant "multiple times prior to the alleged onset date." [*Id.* at 29]. Nonetheless, the ALJ found that Dr. Ocampo's treatment notes did not support her "less than sedentary" limitations opinion. [*Id.*]. The ALJ found no evidence in Dr. Ocampo's treatment notes that Ms. C. "had atrophy in her lower extremities, that she needed an assistive device to walk on a regular basis, or that she consistently had an antalgic gait." [*Id.*]. Further, the ALJ found that Dr. Ocampo's records included no objective medical examination—like an EMG or physical examination—"to show that [Ms. C.'s] carpal tunnel syndrome was a severe impairment that caused significant exertional and non-exertional limitations." [*Id.*].[4] The ALJ concludes by stating that "[f]or these reasons, [he] gives Dr. OCampo's [sic] opinions little weight." [*Id.*].

Ms. C. notes that the applicable regulations require the ALJ to give "controlling weight" to treating doctors' opinions if they are well supported by clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence.

---

[4] The ALJ had indicated previously that the record did not support a determination of severity and that Ms. C.'s carpal tunnel syndrome was merely a non-severe impairment as defined by SSR 96-3p. [DE 11 at 23].

20 C.F.R. § 404.1527[5]; SSR 96-2P[6]; *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009). As such, Ms. C. contends that the ALJ's decision is faulty because it failed to properly consider the mandatory regulatory factors before discounting Dr. Ocampo's treating source opinion and is unsupported by sound reasoning.

ALJs are required to consider every medical opinion in a claimant's records. 20 C.F.R. § 404.1527(c). A medical opinion from a treating source is generally given more weight because of the medical professional's longitudinal experience with the claimant's impairments and treatment. *Id.* § 404.1527(c)(2). A treating source opinion is given controlling weight unless the ALJ finds that the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or (2) is inconsistent with "the other substantial evidence" in the case record. *Id.* Where a treating source opinion is not given controlling weight, the ALJ must consider the examining relationship, treatment relationship, length of relationship and frequency of visits, and nature and extent of the relationship to explain why the opinion is discounted. *Id.* § 404.1527(c); *see also Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). Ms. C. contends that the ALJ did not indicate if or how she considered the Section 1527(c) factors in assigning little weight to Dr. Ocampo's opinion.

---

[5] On January 18, 2017, the Commissioner published new regulations in the Federal Register, which were entitled "Revisions to Rules Regarding the Evaluation of Medical Evidence (82-FR-5844), regarding 20 C.F.R. §§ 416.927 and 404.1527." These new regulations only apply to claims filed after March 27, 2017.
[6] On March 27, 2017, the Commissioner published a notice in the Federal Register that the Commissioner is rescinding SSRs 96-2p, 96-5p and 06-3p for all claims filed after March 27, 2017. Of course, that rescission does not apply to Ms. C.'s claims, which were made prior to that date.

The Commissioner correctly points out that a "treating physician's opinion is entitled to controlling weight if it is well supported by medical findings and is not inconsistent with other substantial evidence in the record." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). In fact, the Commissioner makes the final determination as to whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(d)(1). To do so, the ALJ reviews *all* medical findings and other evidence supporting a medical source statement that a claimant is disabled. *Id.* (emphasis added).

Here, the Commissioner claims that Dr. Ocampo's records are contradictory with respect to the severity of Ms. C.'s knee diagnosis. In her February 2018 medical source statement, Dr. Ocampo notes that Ms. C.'s bilateral knee osteoarthritis is causing significant pain and swelling, and that Ms. C. cannot use her legs and feet for sustained, repetitive action during an eight-hour work day. [DE 11 at 971]. Yet, in October 2017, Dr. Ocampo noted that the Ms. C.'s "[k]nee pain has improved with exercise." [*Id.* at 723]. The Commissioner contends that this note makes Dr. Ocampo's records internally inconsistent.

However, neither the Commissioner nor the ALJ discuss all the relevant evidence in Dr. Ocampo's records. For example, within Dr. Ocampo's records are the following observations dated August 2, 2016, by Judy L. Ellis, a Physicians' Assistant:

> [Ms. C.'s] symptoms include aching, pain, pruritus, heaviness, and tingling of her bilateral lower extremities. The symptoms worsen with prolonged standing and worsen during the day. The symptoms are more pronounced on the right. She has significant swell of the right leg as compared to the left.

> [Ms. C.] has venous clinical severity score of 8/30 including daily pain
> restricting activity and requiring regular use of analgesics, morning ankle
> edema requiring activity change and elevation, and multiple varicose
> veins of the lower extremities, which are more pronounced on the right.

[DE 11 at 766]. In addition, Dr. Ocampo's records also contain a radiology report from Michele D. Semin, MD, dated October 5, 2017, which indicates the following objective medical evidence:

> HISTORY: Arthritis with worsening knee
> . . . .
> FINDINGS: AP [anterior] and lateral views were performed and
> demonstrate tricompartment osteoarthritic changes at are progressed
> since the prior study with the largest osteophytes seen in the
> patellofemoral [knee-thigh] joint. No significant joint space loss is seen
> and there is not fracture or effusion.
>
> IMPRESSION: Progressive degenerative changes in all 3 compartments.

[DE 11 at 782].

Based on the significant gap in the analysis of the records of the treating physician, Ms. C.'s argument that the ALJ did not adequately support his discounting of Dr. Ocampo's records with sound reasoning is persuasive. Indeed, whether a claimant "is sufficiently disabled to qualify for social security disability benefits is a question of law that can't be answered by a physician." *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013) (citations omitted). However, to answer that question of law, an ALJ must determine the claimant's "physical and mental ability to work full time" and cannot ignore medical evidence relevant to that analysis. *Id.* Therefore, the ALJ was

14

bound to review carefully all medical findings and other evidence supporting Dr. Ocampo's conclusion that Ms. C. is disabled. This is where the ALJ failed.[7]

Furthermore, as noted above, an ALJ's decision cannot be affirmed if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez*, 336 F.3d at 539. Where it is clear the ALJ has "cherry-picked" the record to support a finding of non-disability, the decision will lack sufficient evidentiary support and require the Court to remand. *Denton v.* 596 F.3d at 425; *Wilson,* 48 F. Supp. 3d at 1147. The ALJ must articulate his decision in a manner that allows the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered all the important evidence in the record. *Scott,* 297 F.3d at 595. An ALJ may not ignore an entire line of evidence contrary to his findings. *Zurawski v. Halter*, 243 F.3d 881, 888 (7th Cir. 2001). The ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, but he must at least provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner*, 627 F.3d at 618; *Minnick,* 775 F.3d at 935.

Taken as a whole, the ALJ's explicit rationale for significantly discounting Dr. Ocampo's opinion does not logically connect the evidence in the record to his ultimate conclusion rejecting Dr. Ocampo's opinion. *See O'Connor-Spinner*, 527 F.3d at 618. While he did not need to examine every piece of evidence in the record, the ALJ should have

---

[7] For the sake of brevity, the Curt will not recite all of the instances where the ALJ did not discuss significant evidence in Dr. Ocampo's records concerning Ms. C.'s medical condition. Significantly, without limitation, the ALJ failed to acknowledge and discuss evidence regarding Ms. C.'s antalgic gait, knee swelling, knee pain, knee tenderness, limited range of motion in her knees, hips, and lumbosacral spine.

15

more thoroughly examined Dr. Ocampo's records before failing to give her opinion as treating physician's opinion appropriate weight. Not only did the ALJ reject Dr. Ocampo's opinion based on a paucity of allegedly contradictory evidence, but he also failed to note the significant evidence in her records that supported her opinion. Also troubling is the fact that the ALJ opinion implies that he is discounting Dr. Ocampo's opinion merely because she had treated Ms. C. before the alleged onset date—in other words, for many years.[8] Apparently, the ALJ's implication is that Dr. Ocampo cannot be trusted because she has treated the Ms. C. for many years and may have become emotionally attached to her patient. Without additional evidence of bias on the part of Dr. Ocampo, this implication seems like rank speculation and runs contrary to both the Hippocratic Oath and medical ethics. Even if Dr. Ocampo's opinion should be discounted on the basis of bias, the ALJ should carefully consider and specifically discuss the extent that bias—if any—has affected the credibility of the treating physician's opinion and the extent to which the ALJ has discounted the requisite "controlling weight" that is normally afforded to such an opinion.

---

[8] The Seventh Circuit has noted the dichotomy that can accompany a physician's familiarity with a patient:
> The advantage that a treating physician has over other physicians whose reports might figure in a disability case is that he has spent more time with the claimant. The other physicians whose reports or other evidence are presented to the administrative law judge might never even have examined the claimant (that was true here), but instead have based their evidence solely on a review of hospital or other medical records. But the fact that the claimant is the treating physician's patient also detracts from the weight of that physician's testimony, since…many physicians (including those most likely to attract patients who are thinking of seeking disability benefits, …) will often bend over backwards to assist a patient in obtaining benefits."

*Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006).

Finally, this is not a case where the Court has reconsidered the facts or re-weighed the evidence, *cf. Boiles*, 395 F.3d at 425; rather, the Court cannot be confident that the ALJ has properly weighed the evidence and created a logical bridge to his decision because significant evidence in the record has been ignored, disregarded, or unacknowledged. Without a more effective logical bridge, the ALJ has led the Court to infer that he improperly cherry-picked and ignored evidence contradicting his disability determination. *See Denton*, 596 F.3d at 425; *Zurawski*, 243 F.3d at 888. Accordingly, his decision is not supported by substantial evidence such that remand is warranted. On remand, the ALJ should carefully explain—with more than generalities and boilerplate—the precise reasons he affords the opinion of an expert treating physician with "little weight" especially when that type of opinion is normally given "controlling weight".[9]

### D. Subjective Symptom Analysis

Ms. C. also asserts that the ALJ's analysis of Ms. C.'s subjective symptoms is legally insufficient. When reviewing a claim, an ALJ "uses a preponderance of the evidence standard." HALLEX I-3-3-4A (S.S.A.), 1993 WL 643126 (updated May 1, 2017).

---

[9] The Court also recommends that the ALJ consider the guidance from the Seventh Circuit in *Martinez v. Astrue,* 630 F.3d 693 (7th Cir. 2011):
> The gravest error in an opinion with a number of contenders for that distinction is the failure to consider the bearing of Rider's extreme obesity. The administrative law judge mentioned in passing that it is a severe impairment but did not consider its significance in relation to Rider's knee. It is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40. We repeat our earlier reminder that an applicant's disabilities must be considered in the aggregate.

*Id.* at 698-99. As Ms. C. is obese—perhaps morbidly obese—and her subjective complaints indicate that she has had pain, swelling, and tenderness in her knees, and her subjective complaints are supported by objective medical evidence that her osteoarthritic condition is worsening, the ALJ will wish to assess this evidence—in the aggregate—on remand.

A preponderance of the evidence means that after considering the evidence as a whole, the existence of the fact to be proven is more likely than not. 20 C.F.R. § 404.901. Specifically, with respect to evaluating the intensity and persistence of the claimant's symptoms pursuant to SSR 16p–3, the ALJ must determine whether those allegations "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). In other words, is it more likely than not than the claimant's subjective complaints are reasonably consistent with the objective medical and other evidence?

Ms. C. contends that the ALJ used a lesser standard in reviewing her claim, that is, the ALJ used a substantial evidence standard[10] rather than the required preponderance standard. Ms. C. contends that the ALJ's finding that Ms. C.'s reported symptoms and limits were "not entirely consistent" with the evidence, and that Ms. C.'s statements were "not wholly consistent with the evidence" demonstrate that the ALJ used the incorrect, or lesser, standard. The Commissioner's brief does not discuss this issue, instead relying on the argument that the ALJ's review was supported by "substantial evidence." However, as Ms. C. contends, a determination that Ms. C.'s subjective symptoms and statements are "not entirely consistent" and "not wholly consistent," respectively, is a different and lesser standard than the regulatory standard of whether Ms. C.'s allegations "can reasonably be accepted as consistent" with the

---

[10] The SSA Appeals Council reviews an ALJ's decision using a substantial evidence standard. HALLEX I-3-3-4A. "Substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. 20 C.F.R. § 404.901.

objective evidence. *See, e.g.*, *Farley v. Berryhill*, 314 F. Supp. 3d 941, 946 (N.D. Ill. 2018) (discussing 20 C.F.R. § 416.929(a)).

While this distinction may seem esoteric and reminiscent of Aquinian metaphysics,[11] the potential application of this lesser standard taints the ALJ conclusions. Without knowing which of Ms. C.'s statements met the required standard, and which did not, this Court cannot adequately review the ALJ's decision. Complicating our review further is the fact that the ALJ implied that he found some of Ms. C.'s statements to be consistent—without specifying which statements he found consistent and to what extent he found them to be consistent. These deficiencies render meaningful judicial review impossible. *See Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014), as amended (Aug. 20, 2014) ("we cannot assess the validity of the ALJ's determination because the record is devoid of information that might support her assessment"). As such, the Court cannot discern if the ALJ's subjective symptom analysis is supported by substantial evidence and a remand is warranted.

## V. CONCLUSION

As discussed above, the ALJ's decision is not supported by substantial evidence. Accordingly, the Court **REMANDS** this case to the Commissioner for further consideration consistent with this opinion.

---

[11] Contrary to common misconception, Thomas Aquinas (1225-1274) did not ask, "[h]ow many angels can dance on the point of a very fine needle, without jostling one another?" Rather, this satirical joust at medieval theology was posited by Isaac D'Israeli (1766-1848), the father of British Prime Minister Benjamin Disraeli.

**SO ORDERED** this 3rd day of April 2020.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge